THE STATE EX REL. IGNATIOUS, APPELLEE, *v.* INDUSTRIAL
COMMISSION OF OHIO, APPELLANT, ET AL.

[Cite as *State ex rel. Ignatious v. Indus. Comm.,*
99 Ohio St.3d 285, 2003-Ohio-3627.]

(No. 2002–1627—Submitted May 13, 2003—Decided July 23, 2003.)

**Per Curiam.**

{¶ 1} Appellee-claimant John P. Ignatious suffered a work-related injury on May 24, 1999, and a workers' compensation claim was allowed for a sprained neck and herniated discs C4–5 and C5–6. A year later, claimant began receiving temporary total disability compensation ("TTC") and underwent surgery for those conditions.

{¶ 2} On October 20, 2000, his attending physician, Theresa D. Ruch, wrote:

{¶ 3} "At his last office visit which was 8/18/2000 he was complaining of a cold sensation in his right hand and some numbness and tingling in his left hand, also a cotton ball sensation in his throat. At this time all his symptoms have decreased. He's been going to physical therapy, his last visit was a week ago. * * *

{¶ 4} "* * *He would like to go back to work as he's feeling much better. We're going to send him back to work with a 25 pound weight restriction the week after next * * *."

{¶ 5} At the same time, Dr. Ruch issued a work release for November 6, 2000, and Dr. Robert Anschuetz concurred. Three days later, his employer, Transdigm, Inc. & Aero Products, assured claimant that his work restrictions would be accommodated.

{¶ 6} Claimant did not return on November 6. Instead, on November 9, Dr. Ruch indicated that claimant could not return and would be unable to do so until after he obtained an EMG and MRI. The November 15, 2000 report on these tests stated:

{¶ 7} "There are mild to moderate-sized areas of increased signal intensity within the spinal cord at the level of the C4–5 disc representing either areas of spinal cord contusion or infarction at the site of the patient's previous spinal cord compression.

{¶ 8} "Findings of moderate to marked impingement upon the neural foramina of the right and left C5 and C6 nerve roots. The visualization of these neural foramina is not optimal because of artifacts related to the patient's anterior cervical fusion and the degree of neural foraminal impingement may appear greater because of this artifact.

{¶ 9} "Specifically, there has been resolution of the spinal cord compression visualized on the previous examination."

{¶ 10} On November 20, claimant returned to Dr. Ruch. Her office notes of that visit recorded:

{¶ 11} "[Claimant] complained of pain in his hand and arm, occasional pain in his neck when he goes backwards and forwards and could not go back to work. We had an EMG nerve condition study done which shows he has bilateral carpal tunnel. He is complaining of pain in his hand. All the fingers are numb. He has pain coming down from the elbow to the little and long fingers of his right hand. The left hand seems to be fine. We did repeat the MRI scan which shows lots of screw artifact. There are changes in the spinal cord from the previous spinal cord impingement. There are some things on there that I absolutely cannot say because of the screw artifact, basically his graft looks like it is in good position and his spinal cord looks decompressed. His EMG nerve conduction study shows bilateral carpal tunnel. I think that he has that as well as tendinitis of his right hand which is keeping him from using his hand effectively. He is still having some pain in his neck on movement and positioning which I do think is secondary to the surgery. * * * The carpal tunnel he has I am sure is related to multiple repetitive activities and work related injury."

{¶ 12} November 28 saw Dr. Ruch complete a new C–84 physician's report. At question 7, she was asked if claimant could return to his former job. She answered negatively with the notation "see transcription," which all parties

interpreted to refer to her November 20 office notes. When asked to "list ICD–9 Codes with the narrative diagnosis(es) for allowed conditions being treated *which prevent return to work*" (emphasis added), she wrote the numbers 722.0 and 722.71, which correspond to displacement of cervical intervertebral disc without myelopathy and intervertebral disc disorder with myelopathy-cervical region. She was additionally asked to list ICD–9 codes "with narrative diagnosis(es) for other allowed conditions being treated," and she responded with number 354.0, for carpal tunnel syndrome. She again referred to her transcription as the basis for her extension of disability to March 1, 2001.

{¶ 13} On December 1, 2000, an employee from the Ohio Bureau of Workers' Compensation wrote to Dr. Ruch:

{¶ 14} "The notes from the injured worker's examination on 11–20–2000 indicated that Mr. Ignatious could return to work with restrictions that he not lift 25 pounds. Mr. Ignatious had advised the Bureau of Workers' Compensation that he was returning to work.

{¶ 15} "Then the Bureau of Workers' Compensation receives a C84 taking Mr. Ignatious off work with an estimated return to work date of 3–1–2001. The Claims Specialist at the Bureau of Workers' Compensation calls your office for clarification. This claim is allowed for 847.0 and herniated disc C4–C5 and C5–C6. Medical from the office visit on 11–20–2000 reveal[s] that the injured worker has bilateral carpal tunnel. This is not allowed on this claim at this time.

{¶ 16} "The Claims Specialist was advised by your office that the injured worker was continuing to have neck pain and tendinitis. All previous medical documentation indicates that the injured worker had neck pain, however your office note of 11–20–2000 [sic, 10/20/00] released Mr. Ignatious to work. The Fairview Hospital notes of 11–11–2000 indicate that the injured worker had pain in his hands. The notes of 11–20–2000 mostly refer to the pain that the injured worker is having in both hands. The Claims Specialist is trying to clarify the change regarding the return to work from 11–20–2000 to 11–28–2000. As the claim is not allowed for bilateral carpal tunnel, please advise what the changed circumstances are from 11–20–2000 to 11–28–2000."

{¶ 17} Dr. Ruch's December 15 office notes were presumably in response to this request, as she noted:

{¶ 18} "Mr. Ignatious' records were sent to me and they state he has fibromyalgia and a cervical whiplash syndrome. I don't think this is the cause of his current neck pain. I think that his fibromyalgia and whiplash were most likely due to the cervical disc herniations that he had and his new problem is from the cervical disc. Now he is post surgery."

{¶ 19} She also prepared a new C–84 dated January 9, 2001. There, she named neck pain as the sole reason for claimant's inability to return to his former position of employment and indicated that claimant was being treated for code 722.0 (cervical intervertebral disc disorder) and 847.0 (neck sprain). Carpal tunnel syndrome was not listed as a cause of disability. On May 18, she sent her most direct clarification yet:

{¶ 20} "John Ignatious * * * has been temporarily totally disabled from May 9, 2000 and was estimated to return to work on March 1, 2001, due to his allowed condition of sprain of neck and herniated disc C4–5 and C5–6."

{¶ 21} Appellant Industrial Commission of Ohio nevertheless denied TTC from November 6, 2000, forward:

{¶ 22} "Claimant's attending physician and surgeon faxed a return to work slip to the employer on 10/20/2000 indicating a return to work of 11/06/2000 with restrictions. The employer in turn notified the claimant that they were 'looking forward' to his return on that date and would make the accommodations necessary to comply with Dr. Ruch's 25 pound weight restriction. The claimant however did not return to work on that date and has in fact not returned as of the date of this hearing.

{¶ 23} "The claimant testified at hearing that he experienced an exacerbation of his symptoms shortly before his scheduled return to work date (possibly due to sleeping incorrectly) and that he was unable to return to work. He indicated that he informed Dr. Ruch of this episode and was prescribed medication and scheduled for an appointment. Dr. Ruch re-evaluated the claimant on 11/20/2000 and completed another C–84 report dated 11/28/2000 in which she disabled the claimant through 03/01/2001. (Dr. Ruch incorporated by reference a notation to see her transcription records which focused on claimant's carpal tunnel syndrome, a non-allowed condition of the claim). Dr. Ruch completed yet another C–84 on 01/09/2001 and attempted to rectify the muddled situation by changing the allowed diagnostic codes and certifying disability for the correct conditions. This opinion was also verified again by Dr. Ruch in a report dated 05/18/2001.

{¶ 24} "The Deputy finds that the claimant's request for further compensation is not supported by the evidence. The original C–84 dated 11/28/2000 is based on a non-allowed condition as the doctor's own office notes from that date indicate that claimant's problems are due to carpal tunnel syndrome. Further, Dr. Ruch does not explain why she changed her opinion as to the claimant's underlying disability in the 01/09/2001 C–84 report. The claimant testified that he experienced an aggravation of symptoms, however Dr. Ruch makes no mention of this or any other reason for the change. On 10/20/2000, she found that claimant was doing well and ready to go back to work.

{¶ 25} "The Deputy further notes that the Bureau of Workers' Compensation had the claimant examined on 10/24/2000 by Dr. Anschuetz who concurred with Dr. Ruch's 10/20/2000 office evaluation that the claimant could return to work with restrictions.

{¶ 26} "The Deputy orders that claimant's request for further temporary total compensation be denied based on the 10/24/2000 report of Dr. Anschuetz and the 10/20/2000 office record of Dr. Ruch.

{¶ 27} "The Deputy finds that Dr. Ruch's C–84 report of 11/28/2000 is based on a non-allowed condition as evidenced by her office record and further finds that inexplicably Dr. Ruch fails to give a basis for the 'about-face' in her medical opinion."

{¶ 28} Claimant petitioned the Court of Appeals for Franklin County for a writ of mandamus, alleging that the commission abused its discretion in denying TTC. A split court of appeals held that a limited writ of mandamus was proper. The majority held that the commission erred in reading Ruch's report as evidence attributing claimant's disability to nonallowed carpal tunnel syndrome. It ordered the commission to reevaluate the evidence and issue a new order either granting or denying TTC. The dissent, however, stated that the majority was improperly substituting its interpretation of the evidence for the commission's and recommended that the commission order be upheld.

{¶ 29} This cause is now before this court upon an appeal as of right.

{¶ 30} We are asked to determine whether the commission abused its discretion in denying TTC. At the heart of this controversy is Dr. Ruch's reference to carpal tunnel syndrome in some of her reports. In asserting an entitlement to compensation, claimant relies on *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 619 N.E.2d 1018. *Waddle* held that the presence of a nonallowed condition—even if disabling—could not defeat a claim for compensation so long as the claimant could show that the allowed conditions were independently disabling. Claimant stresses that his physician's reports expressly attribute his disability exclusively to his allowed conditions. He argues that the commission misread the reports as stating that his nonallowed carpal tunnel syndrome was contributing to his inability to return to his former job.

{¶ 31} The commission's response is rooted in its exclusive authority to evaluate the weight and credibility of the evidence before it. The commission asserts its right to look at the totality of the circumstances—an examination that the commission argues supports its position. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. Citing Dr. Ruch's October 2000 notations, the commission emphasizes claimant's medical progress with regard to the allowed conditions that prompted Dr. Ruch to release him to return. Dr. Anschuetz concurred. Then, in November, Dr. Ruch delayed

claimant's return, and the accompanying medical evidence was replete with discussion of carpal tunnel syndrome. From this, the commission contends that it was entitled to infer that carpal tunnel syndrome was contributing to claimant's disability.

{¶ 32} Both sides offer compelling arguments. Claimant has accurately cited both *Waddle* and the evidentiary consensus as to causal relationship on his case. Equally valid is the commission's emphasis on its evidentiary prerogative. Without question, the commission is entitled to draw inferences from the evidence before it. What it is not empowered to do, however, is alter the burden of proof.

{¶ 33} No one disputes claimant's responsibility to establish a causal relationship between his allowed conditions and the claimed disability. He is *not*, however, required to disprove a negative. Having supplied evidence of a direct causal relationship between his allowed neck conditions and his disability, he is not required to further show that his carpal tunnel syndrome is not causing his inability to work. Yet upon review, this is what the commission indeed appears to have done. In response to the bureau's request for clarification, Dr. Ruch supplied a January 9, 2001 C–84 and a May 18, 2001 letter. The former listed "neck pain" as the sole cause of disability and the latter expressly to the allowed conditions of "sprain of neck and herniated discs C4–5 and C5–6." That the commission order continued even after these clarifications to rely on the presence of carpal tunnel syndrome to disqualify this evidence implies but one thing: that the evidence was deemed insufficient because it did not affirmatively state that carpal tunnel syndrome was not influencing claimant's inability to work. In tacitly requiring this, the commission overstepped its bounds.

{¶ 34} All of the evidence in this case attributes claimant's inability to work to the allowed conditions only. We order the commission to grant TTC from November 6, 2000, to March 1, 2001, consistent with Dr. Ruch's C–84s.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

COOK, J., not participating.

———————

Gary H. Hoffman, for appellee.

Jim Petro, Attorney General, and Erica L. Bass, Assistant Attorney General, for appellant.