DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Voith Sulzer Paper Technology North America, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which granted temporary total disability ("TTD") compensation to respondent, Gladys Marshall ("claimant"), and ordering the commission to find that claimant is not entitled to the requested compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator failed to demonstrate that the commission abused its discretion in awarding claimant TTD compensation and recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator submits two objections to the magistrate's decision. The first error claimed is that the magistrate assumed what the staff hearing officer ("SHO") determined to be the source of claimant's disability which relator argues is contrary to the evidence in the record. Relator secondly contends that the magistrate erred in awarding disability covering the two-year period of time beginning July 20, 2001, asserting that there is no evidence of contemporaneous treatment records supporting such disability.
 {¶ 4} The SHO affirmed the order of the district hearing officer ("DHO") who relied on the medical evidence submitted by Drs. Carlos M. Ongkiko and Stephen R. Pledger that the injured worker's severe pain is coming from the allowed claim condition as well as from some non-allowed disc levels. The DHO further found persuasive evidence from the medical record test results and the injured worker's testimony that she is unable to perform her prior job due to the allowed claim conditions. This analysis is stated to be based on the reports of Drs. Ongkiko and Pledger, and a discogram. The SHO found that claimant was unable to return to perform the duties of her former position of employment from July 20, 2001 to July 10, 2003, as a result of the allowed conditions in the claim. The SHO further found that the injured worker's period of disability is not the result of non-allowed conditions.
 {¶ 5} Relator points out that the only claim allowed that included the specific term "disc herniation" was at the L2-3 level. Therefore, since Dr. Ongkiko referred to the pain and disability as primarily emanating from the L4-5 level, which was allowed only for degenerative disc disease, the commission has essentially attributed the disability to a non-allowed condition. We disagree, as did our magistrate. In the January 2, 2003 office notation, Dr. Ongkiko referred to significant pain reproduction at the L4-5 on the lumbar discogram performed on May 15, 2001. He then stated that he would do the discogram to assess the "herniated disc" at the L4-5 level. In his office notation, Dr. Ongkiko calls degeneration at claimant's L4-5 level a herniated disc, clearly referring to the disc degeneration that is allowed in this claim. Disc herniation is also how he refers to this condition on the C-84 report. The L4-5 disc produces significant pain as demonstrated by the May 15, 2001 discogram according to Dr. Ongkiko's office notation. Relator's objection focuses only on Dr. Ongkiko's discussion of the L3-4 disc, and ignores the fact that Dr. Ongkiko consistently refers to production of pain at L4-5 and the need to fuse this level.
 {¶ 6} We disagree that our magistrate made irresponsible assumptions but, instead, find that there was sufficient evidence before the commission to conclude that it was a condition allowed for disc degeneration at the L4-5 level that produced the herniation for which surgery is needed which is the condition that temporarily disables her from her work. Relator's first objection to the magistrate's decision is overruled.
 {¶ 7} Relator secondly contends that the award of disability covering a two-year period of time beginning July 20, 2001, is not supported by the evidence, that Dr. Ongkiko was not claimant's physician of record until September 6, 2002, and, therefore, the earliest possible date for considering his opinion as to the onset of TTD would be that date. However, there is evidence in the record that Dr. Ongkiko was claimant's physician at times relevant to the period that TTD was awarded. Dr. Pledger noted in his October 26, 2001 report that claimant was last seen by Dr. Ongkiko. Additionally, Dr. Ongkiko is listed on the May 15, 2001 discogram report as the ordering physician. Lastly, on September 6, 2002, claimant signed documents formally requesting the change to Dr. Ongkiko as her physician of record. Just because Dr. Ongkiko was not claimant's physician of record prior to September 2002, does not prove that he did not treat her prior to that time.
 {¶ 8} Relator has failed to show any abuse of discretion on the part of the commission in accepting Dr. Ongkiko's opinion that the disability from the allowed claims caused claimant to be temporarily and totally disabled commencing July 20, 2001.
 {¶ 9} Relator's second objection to the report of the magistrate is overruled.
 {¶ 10} Following an independent review of this matter, we find that the magistrate has accurately determined the pertinent facts and applied the appropriate law. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's recommendation, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Bryant and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Voith Sulzer Paper: Technology North America, Inc., : Relator, : v. : No. 04AP-65 Industrial Commission of Ohio : (REGULAR CALENDAR) and Gladys Marshall, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 25, 2004 Schottenstein, Zox Dunn L.P.A., Robert M. Robenalt andAaron L. Granger, for relator.
Jim Petro, Attorney General, Erica L. Bass and Charissa Payer, for respondent Industrial Commission of Ohio.
Casper Casper, and Megan Richards, for respondent Gladys Marshall.
 IN MANDAMUS {¶ 11} Relator, Voith Sulzer Paper Technology North America, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Gladys Marshall ("claimant"), and ordering the commission to find that claimant is not entitled to the requested compensation.
Findings of Fact:
 {¶ 12} 1. Claimant sustained a work-related injury on December 12, 1995. Claimant's claim was originally allowed for: "lumbar strain." On May 5, 1998, claimant's claim was additionally allowed for: "disc herniation L2-3." Later, claimant's claim was additionally allowed for: "degenerative disc disease at L4-5."
 {¶ 13} 2. Relator has been receiving treatment from two physicians: Dr. Stephen R. Pledger and Dr. Carlos M. Ongkiko, to whom Dr. Pledger originally referred claimant for an evaluation on March 27, 2001. Dr. Ongkiko continued to provide consultation and treatment to claimant from March 27, 2001 through September 6, 2002, at which time claimant filed a request to change her physician of record to Dr. Ongkiko.
 {¶ 14} 3. In date order, the record contains the following medical evidence:
(a) Dr. Ongkiko's treatment notes from August 18, 1998, noting that this was a follow-up visit, that the MRI performed August 10, 1998, shows a resolution of the disc at the L2-3 level.
(b) Dr. Ongkiko's treatment note from April 8, 1999, noting that claimant returned with recurrent back pain and pain radiating down her leg with numbness in her toes.
(c) Dr. Ongkiko's June 24, 1999 treatment notes indicating that claimant has lumbar back pain around the sacroiliac joint radiating down to the hip, thigh, and calf muscles. He describes the pain as S-1 radiculopathy and notes that the pain is constant on walking, standing, and sitting. Dr. Ongkiko noted that the repeat MRI performed in May 1999 showed no significant stenosis and only a bulging disc on the left at L2-3. He notes mild degeneration of L4-5 but no disc involvement at L4-5 or L5-S1. He indicates that she walks with a limp and that he wants a repeat MRI to rule out stenosis at L4-5.
(d) The May 15, 2001 lumbar discography which indicated as follows:
1. L2-3 Level * * *: No pain production. Abnormal nucleogram.
2. L3-4 Level * * *: 8/10 Concordant pain production. Abnormal nucleogram.
3. L4-5 Level * * *: 7/10 Concordant pain production. Abnormal nucleogram.
4. L5-S1 Level * * *: No pain production. Abnormal nucleogram. The CT discography noted the following:
1. L2-3 Level: 5 o'clock position posterolateral leftward annular tear, mild symmetrical facet arthropathies.
2. L3-4 Level: 4 o'clock position leftward annular tear, moderate right and mild left facet arthropathies.
3. L4-5 Level: Diffuse annular disc bulge, 5 o'clock and 7 o'clock annular tears with epidural contrast leakage.
4. L5-S1 Level: Mild symmetrical facet arthropathy, normal nucleogram.
(e) Dr. Pledger's medical report dated October 26, 2001, wherein he noted as follows:
* * * Mrs. Marshall has been bouncing back and forth between Dr. Ongkiko and me for this particular problem. * * * Dr. Ongkiko and I both agree that the old disc at the L2-3 level is not in the nerve root distribution for which she is complaining. * * * Earlier I had performed a discogram on Mrs. Marshal[l]; that was about a year ago in October of 2000. At that time I found that the L4-5 disc was eliciting all of the pain that she has been experiencing. Then in May of 2001, Dr. Masters apparently had done a discogram for Dr. Ongkiko at Christ Hospital. He did find that the L4-5 disc also was the source of her symptoms, however, he also found that the L3-4 level now is also causing her symptoms. * * * I still contend at this point that the degenerative disc at the L4-5 level and some of the annular tears that are found are the direct and proximal cause of her Workman's Comp injury. * * *
(f) Dr. Ongkiko's treatment notes of January 2, 2003, wherein he noted the following:
This 60-year-old lady returned today for intractable back pain that is constant and unremitting. She takes medication continuously to relieve the pain. The pain in her back is graded as 8 to 9 out of 10 aggravated after walking ten to fifteen minutes or on even sitting for fifteen minutes. This will also radiate down to the left leg down to the calf muscles. There is significant pain reproduction at L3-4 and L4-5 on the lumbar discogram done on 5-15-01. She has been treated with a back support brace that helps her partially. She is totally incapacitated at this time and unable to bear the pain. She wants surgery performed. I will do the myelogram to assess the herniated disc at the L4-5 level and to measure the pedicle. Following this she will be followed for a posterior lumbar interbody fusion at L3-4 and L4-5 with posterolateral fusion and pedicle screw fixation. She understands this and the screw and the rod were presented and shown to her. She understands the indications, risk and benefits.
(g) The May 1, 2003 report of Dr. Kiva Shtull who stated that claimant has not yet reached maximum medical improvement specifically with respect to the condition of "degenerative disc disease at L4-5"; but was of the opinion that she could return to her former position of employment with very severe restrictions.
(h) The July 1, 2003 C-84 of Dr. Ongkiko certifying TTD compensation from July 20, 2001 to the present on the basis that the lumbar discogram is positive for instability, that claimant needs lumbar fusion, she is totally disabled, and they are awaiting approval for surgery. The disabling condition was listed as herniated lumbar disc.
 {¶ 15} 4. Claimant filed a motion seeking TTD compensation based upon the above evidence.
 {¶ 16} 5. Claimant's motion was heard before a district hearing officer ("DHO") on May 15, 2003, and resulted in an order granting the requested compensation as follows:
The District Hearing Officer orders that Temporary Total Disability Compensation be paid from 07/12/2001 to 05/01/2003 and to continue based upon medical evidence of Dr. Ongkiko and Dr. Pledger that the injured worker's severe pain is coming from the allowed claim conditions as well as some non-allowed disc levels. The District Hearing Officer finds persuasive evidence from the medical reports, test results and injured worker's testimony that she is unable to perform her prior job due to the allowed claim conditions.
This order is based on the reports of Dr. Carlos Ongkiko (01/02/2003), Dr. Pledger (10/26/2001), and Discogram (05/15/2001).
 {¶ 17} 6. Relator's appeal was heard before a staff hearing officer ("SHO") on July 10, 2003, and resulted in an order affirming the prior DHO order. The SHO specifically noted as follows:
The injured worker's C-86 filed 03/10/2003 is granted.
The Hearing Officer finds that the injured worker was unable to return to and perform the duties of her former position of employment from 07/20/2001 to 07/10/2003 as a result of the allowed conditions in the claim. Therefore, temporary total compensation is to be paid for said period, less sickness and accident benefits.
It is the order of the Hearing Officer that further temporary total compensation is to be paid upon submission of additional medical evidence which documents the injured worker's inability to return to the duties of her former position of employment.
The Hearing Officer finds that the injured worker's period of disability is not the result of non-allowed conditions.
The Hearing Officer relies on the report of Dr. Ongliko [sic] (01/02/2003), Dr. Pledger (10/26/2001), Dr. Sthull [sic] (05/01/2003) and the 05/15/2001 discogram.
 {¶ 18} 7. Further appeal by relator was refused by the commission.
 {¶ 19} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} Relator raises two arguments in this mandamus action: (1) the commission abused its discretion by awarding TTD compensation where the medical evidence establishes that nonallowed conditions are disabling the claimant; and (2) the commission abused its discretion by relying upon the medical evidence submitted by Dr. Ongkiko who only sporadically treated claimant during the time period. For the reasons that follow, this magistrate disagrees.
 {¶ 22} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. Regardless of the type of compensation sought by a claimant, the claimant is obligated to show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. See, e.g., State ex rel.Waddle v. Indus. Comm. (1993), 67 Ohio St.3d 452; State ex rel.Watts v. Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118; and State ex rel. Ignatious v. Indus. Comm., 99 Ohio St.3d 285,2003-Ohio-3627. It is undisputed that compensation awarded to a claimant can be paid only for the allowed conditions and that nonallowed conditions cannot be used to advance or defeat a claim for compensation. Waddle.
 {¶ 23} In its first argument, relator contends that the commission abused its discretion by awarding TTD compensation. Relator points to the medical evidence on file indicating that claimant is currently experiencing a herniated disc at L4-5 which the physicians indicate is causing her current pain. Relator contends that claimant's claim has only been allowed for "degenerative disc disease at L4-5," which would not include any disc herniation.
 {¶ 24} Based upon a review of the record, one thing is certainly clear, and that is that claimant's back condition has continued to deteriorate. Although the record does show that the disc herniation at L2-3 had resolved to a large extent, it is apparent that the degenerative effects at the L4-5 level are continuing.
 {¶ 25} The word "degeneration" is defined in Taber's Cyclopedic Medical Dictionary (18 Ed. 1997) 499, as follows: "Deterioration or impairment." This court can take judicial notice of the fact that degenerative disc disease, in and of itself, encompasses various different conditions and can progressively worsen. Degenerative disc disease is characterized by many different components (i.e., tears in the outer annulus, compression of and bulging of the disc, loss of disc space, etc.). Degenerative disc disease is a degenerative condition of the spine that at times produces pain from a damaged disc. Over time, as a result of continuing degeneration, a disc can herniate.
 {¶ 26} In the present case, the commission determined, after hearing relator's arguments, that the claimant's disability was specifically due to allowed conditions. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder. Teece, supra. In the present case, this magistrate finds that the commission's order is supported by some evidence and that the current herniation suffered by the claimant at L4-5 was determined by the commission to be part of her degenerative disc disease at L4-5, a continuing degeneration and not a separate condition which needed to be allowed in the claim before compensation could be paid. Similarly, the doctors' reports indicate that claimant is currently experiencing pain radiating down her legs. At times, such symptoms are part of an allowed condition called "radiculopathy," and other times they are merely a symptom of another allowed condition, such as "degenerative disc disease." In the present case, based upon a review of the evidence, the commission did not abuse its discretion in finding that claimant's back condition of degenerative disc disease L4-5, indicates had worsened over time such that the herniation of the disc occurred as a result.
 {¶ 27} Relator also contends that the commission abused its discretion by relying upon the report of Dr. Ongkiko although he only treated claimant sporadically over the time period. InState ex rel. Kroger Co. v. Morehouse (1995),74 Ohio St.3d 129, the employer had challenged the award of TTD compensation to a claimant, in part, because the doctor, upon whose report the commission relied, did not have "regular" contact with the claimant during the entire time period. The court specifically noted that a lengthy period of time during which a doctor has no patient contact does not invalidate the doctor's certification that the claimant is temporarily and totally disabled in its entirety. However, the court noted that a lengthy period during which the doctor has no patient contact casts doubt on the reliability of the doctor's certification. In Kroger, the court found that the combination of the lengthy period between doctor visits and the fact that the claimant had been working operated together to render an abuse of discretion on the part of the commission to rely on that particular doctor's report.
 {¶ 28} In the present case, the facts are vastly different. Claimant's back condition has progressively worsened and her pain is such that conservative measures are no longer adequate and Dr. Ongkiko recommends that she have surgery. Even Dr. Shtull admits that the condition has not reached maximum medical improvement, although he does believe that she can return to her former position of employment with serious restrictions. Based upon all of the evidence, this magistrate finds that the commission did not abuse its discretion in relying upon the office notes of Dr. Ongkiko, even though he was not the only physician she was seeing and there were relatively lengthy periods in between some of her visits.
 {¶ 29} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in awarding claimant TTD compensation and this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks 
STEPHANIE BISCA BROOKS MAGISTRATE