DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION.
{¶ 1} Relator, Travelcenters of America, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order which awarded respondent-claimant Alex J. Nichols a 98 percent loss of vision award and further ordering the commission to find that respondent-claimant was not entitled to an increase in his permanent partial disability award.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to demonstrate that the commission had abused its discretion and that this court should deny the requested relief.
 {¶ 3} Relator has filed objections to the decision continuing to reargue the issues before the magistrate. Specifically, relator argues that Dr. Eckert's report in which he noted, "claimant has suffered an irreversible vision loss in his right eye, consistent with a progressive problem such as traumatic optic neuropathy," must mean that, "Dr. Eckert believes that claimant has a traumatic optic neuropathy due to the effects of the industrial injury." (Relator's objections, at 2.) However, as was emphasized in the decision of the magistrate, Dr. Eckert did not opine that claimant had traumatic optic neuropathy. For the reasons stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objections overruled; writ of mandamus denied.
Petree and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Travelcenters of America,: Relator, : v. : No. 03AP-1278 Alex J. Nichols and Industrial : (REGULAR CALENDAR) Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 30, 2004 Buckingham, Doolittle Burroughs, LLP, Paul J. Hess, Jr.,Carla J. Cannon, Brett L. Miller and Richard Hernandez, for relator.
Law Offices of Thomas Tootle, and Thomas Tootle, for respondent Alex J. Nichols.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Travelcenters of America, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded respondent Alex J. Nichols ("claimant") a 98 percent loss of vision award, and ordering the commission to find that claimant was not entitled to the increase in his permanent partial disability ("PPD") award.
Findings of Fact:
 {¶ 6} 1. Claimant sustained a work-related injury on February 6, 1998, when he was struck in the head with a brake chamber. Claimant's claim was allowed for "open wound of forehead."
 {¶ 7} 2. Following the injury, claimant experienced headaches, dizziness, and light-headedness while standing.
 {¶ 8} 3. On November 13, 2000, claimant filed an application for the determination of permanent partial disability concerning "head injury, lacerated skull, visual disturbances, headaches, confusion."
 {¶ 9} 4. At the time of the hearing before the district hearing officer ("DHO") the record contained medical reports from the following doctors: Dr. Kenneth A. Writesel, Dr. Kevin B. Lake, and Dr. John W. Cunningham. In his January 29, 2001 report, Dr. Writesel noted small posterior vitreous detachment in the right eye, as well as the presence of some vitreous debris. Dr. Writesel noted that claimant had a decrease in his lateral fields with visual field testing in the right eye showing a 45 degree loss in the temple/lateral fields. Dr. Writesel opined that this was a 31 percent visual loss which equated with a 29 percent whole person impairment. In his March 28, 2001 report, Dr. Cunningham noted that claimant had visual difficulties regarding loss of both lateral vision and central vision in his right eye and opined that the loss was causally related to the allowed conditions in his industrial claim. Dr. Cunningham found a 61 percent impairment in the right eye which equated to a 14 percent whole person impairment plus a one percent whole person impairment for the laceration itself. In his March 26, 2001 report, Dr. Lake opined that claimant had a 30 percent impairment of the whole person.
 {¶ 10} 5. The matter was heard before a DHO on May 2, 2001, and resulted in the DHO awarding claimant a 15 percent permanent partial disability based upon the reports of Drs. Writesel, Lake, and Cunningham.
 {¶ 11} 6. The matter was appealed by relator and was heard before a staff hearing officer ("SHO") on June 7, 2001. Based upon the report of Dr. Cunningham, the SHO concluded that claimant was entitled to a one percent permanent partial disability.
 {¶ 12} 7. On June 22, 2001, claimant filed a motion to have his claim additionally allowed for loss of vision caused by the head injury he suffered on February 6, 1998. Claimant's motion was supported by the March 28, 2001 report of Dr. Cunningham.
 {¶ 13} 8. By order dated October 23, 2001, the DHO concluded that claimant was entitled to a 61 percent loss of vision award and that the start date would be the date of injury.
 {¶ 14} 9. Relator appealed and the matter was heard before an SHO on March 6, 2002, who affirmed the DHO order and additionally allowed claimant's claim for "61% loss of vision, right eye." This order was based upon the March 28, 2001 report of Dr. Cunningham.
 {¶ 15} 10. Further appeal by relator was refused.
 {¶ 16} 11. On May 9, 2002, claimant filed a motion with the Ohio Bureau of Workers' Compensation ("bureau") requesting that his claim be additionally allowed for "traumatic optic neuropathy." Claimant also requested that he be granted compensation for 98 percent loss of vision resulting from the injury. Claimant submitted the medical reports from Drs. Grey L. Eckert and G.F. Calloway, Jr., in support of his motion. In his July 28, 2001 report, Dr. Eckert noted that claimant has continuing vision loss in his right eye affecting both his center and side vision, that his vision is reduced at all times, that the loss has been progressive, and opines that there is a history of optic nerve atrophy. In his February 25, 2002 report, Dr. Eckert indicates that claimant now has a 98 percent loss of vision in his right eye, has little to no peripheral vision in his right eye, and decreased acuity in his left eye, and notes that there has been a constant deterioration of his vision since the accident in 1996. In his April 20, 2002 report, Dr. Eckert noted that claimant has suffered progressive and irreversible vision loss in his right eye which is "consistent with a progressive problem such as traumatic optic neropathy [sic]." Claimant also submitted the December 10, 2000 report of Dr. Calloway, who noted that claimant has had significant and progressive loss of vision post-injury, that there is no ocular evidence to support the vision loss but that he could not do a full exam at this time. Claimant returned to see Dr. Calloway and, in his February 6, 2002 report, Dr. Calloway noted that claimant had a "completely normal ocular examination." Dr. Calloway opined that claimant's vision loss was suggestive of functional deficit rather than a true organic injury-cause deficit.
 {¶ 17} 12. The record also contains a June 29, 2002 report of Dr. James G. Limbert, who noted that he did not see any damage to the optic nerve. As such, Dr. Limbert found no evidence of traumatic optic neuropathy. Dr. Limbert recommended that claimant have an electroretinogram and opined that claimant's visual loss may be psychological.
 {¶ 18} 13. The record also contains the October 28, 2002 report of Dr. Frederick H. Davidorf, who confirmed that claimant does have visual loss; however, Dr. Davidorf was not able to provide an explanation for the loss of vision inasmuch as he found no evidence of ocular injury.
 {¶ 19} 14. Claimant's motion was heard before a DHO on December 18, 2002. The DHO specifically disallowed claimant's claim for traumatic optic neuropathy, right eye, based upon the reports of Drs. Calloway, Limbert, and Davidorf. Furthermore, the DHO denied claimant's request for an increase in his loss of vision award.
 {¶ 20} 15. Claimant appealed and the matter was heard before an SHO on March 12, 2003. The SHO modified the prior DHO order. Based upon the reports of Drs. Calloway, Limbert, and Davidorf, the SHO agreed that claimant's claims should not be additionally allowed for traumatic optic neuropathy. However, the SHO did make an award for vision loss as follows:
However, the Staff Hearing Officer also notes that the claimant's visual field in his right eye continues to deteriorate.
Therefore, based on the 02/25/2002 and 04/20/2002 reports from Dr. Eckert, the claimant's award for permanent partial loss of vision in the right eye is increased. Based on the reports of Dr. Eckert, the claimant's loss of vision in the right eye is now 98%, an increase of 37% from the prior finding of 61%.
 {¶ 21} 16. Relator's appeal was refused by order of the commission mailed April 1, 2003.
 {¶ 22} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} Claimant sought an award pursuant to R.C. 4123.57(B) which provides, in pertinent part, as follows:
In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
* * *
For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. * * *
 {¶ 25} In the present case, relator contends that the commission abused its discretion by basing the 98 percent loss of vision award on a nonallowed condition, "traumatic optic neuropathy." Relator contends that, in his February 25, 2002 report, Dr. Eckert noted that claimant had previously been diagnosed as having traumatic optic neuropathy and nowhere based the loss of claimant's vision upon the allowed condition of "open wound of forehead." For the following reasons, this magistrate disagrees.
 {¶ 26} In awarding claimant the 98 percent loss of vision award, the commission relied upon the reports of Drs. Eckert, Calloway, Limbert, and Davidorf. All four of those doctors accepted that claimant has sustained a loss of vision in his right eye, that the loss of vision is a direct result of the industrial injury, and that the loss of vision has gotten progressively worse. The only thing the doctors disagree is what diagnosis should be given to claimant's loss of vision. In his February 25, 2002 report, Dr. Eckert indicated that Dr. Bartlett, whose report is not contained within the stipulated evidence, had diagnosed "traumatic optic neuropathy." While indicating that claimant has had a constant deterioration of vision since the 1996 accident, and noting that claimant has a 98 percent loss of vision at the present time, Dr. Eckert did not opine that claimant had traumatic optic neuropathy. In his February 20, 2002 report, Dr. Eckert noted that claimant's continued loss of vision is "consistent with a progressive problem such as traumatic optic neuropathy." (Emphasis added.) Again, Dr. Eckert did not opine that claimant had traumatic optic neuropathy. In fact, none of the doctors whose reports are in the stipulated evidence have actually diagnosed claimant as having traumatic optic neuropathy. Instead, the evidence shows that his symptoms resemble what a doctor would expect to find in a patient who has traumatic optic neuropathy.
 {¶ 27} As stated previously, the medical evidence supports the conclusion that claimant has suffered a significant and progressive loss of vision in his right eye and that this loss of vision is a direct and proximate result of the industrial injury he sustained on February 6, 1998. Based upon testing done, Dr. Eckert concluded that claimant's loss of vision was equal to 98 percent. Based upon that report, the commission granted claimant a 98 percent loss of vision award. Based upon all the medical evidence, specifically, the reports of Drs. Calloway, Limbert, and Davidorf, the commission refused to additionally allow claimant's claim for "traumatic optic neuropathy," as none of the medical evidence supports that as the diagnosis. So, while claimant's original claim was only allowed for "open wound of forehead," the medical consequences of that injury have extended far beyond what anyone would have imagined, including both relator and claimant herein. It is undisputed that, regardless of the type of compensation sought by a claimant, the claimant is obligated to show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. See, e.g., State ex rel. Waddle v. Indus.Comm. (1993), 67 Ohio St.3d 452; State ex rel. Watts v.Schottenstein Stores Corp. (1993), 68 Ohio St.3d 118; and Stateex rel. Ignatious v. Indus. Comm., 99 Ohio St.3d 285,2003-Ohio-3627.
 {¶ 28} In the present case, although none of the doctors have been able to give a diagnosis, all of the medical evidence supports a finding that claimant's loss of vision is a direct and proximate result of the industrial injury he sustained. As such, relator's first argument fails.
 {¶ 29} Relator also contends that the commission abused its discretion and argues that the commission had rejected Dr. Eckert's reports when they refused to allow the claim for the condition of traumatic optic neuropathy and then could not revive those reports as some evidence for the percentage of permanent partial disability. State ex rel. Zamora v. Indus. Comm.
(1989), 45 Ohio St.3d 17. As explained in the preceding paragraph, Dr. Eckert never opined that claimant had "traumatic optic neuropathy." Dr. Eckert's report was never rejected. Instead, Dr. Eckert noted that a Dr. Bartlett had made that diagnosis and that claimant's loss of vision was consistent with a problem such as traumatic optic neuropathy; however, Dr. Eckert never made that diagnosis. Furthermore, even if Dr. Eckert's report is construed as indicating that claimant has traumatic optic neuropathy, Zamora would not preclude the commission from rejecting that portion of his report while accepting his objective finding that claimant now suffers from a 98 percent loss of vision in that eye. In State ex rel. Verbanek v. Indus.Comm. (1995), 73 Ohio St.3d 563, the Ohio Supreme Court recognized that medical reports are often comprised of distinct parts. In State ex rel. Fries v. Indus. Comm., Franklin App. No. 01AP-721, 2002-Ohio-3252, this court observed that a rejection of a portion of a medical report does not necessarily dictate that the entire report be removed from consideration. Dr. Eckert had documented a continued deterioration and worsening of claimant's vision and the commission could accept that portion of his report indicating that claimant's vision had continued to worsen even if the commission rejected the diagnosis of traumatic optic neuropathy. As such, relator's Zamora argument fails.
 {¶ 30} Lastly, relator contends that the commission abused its discretion by increasing the award without specifically stating the evidence relied upon. This magistrate disagrees. Again, relator's argument is based in part on its continued assertion that Dr. Eckert opined that claimant had "traumatic optic neuropathy"; however, as this magistrate has stated previously, Dr. Eckert did not opine as such. Instead, Dr. Eckert's report did constitute "some evidence" upon which the commission relied in making the 98 percent award.
 {¶ 31} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in increasing claimant's award of PPD compensation to 98 percent loss of vision award and this court should deny relator's request for a writ of mandamus.
 /s/Stephanie Bisca Brooks 
STEPHANIE BISCA BROOKS MAGISTRATE