DECISION
{¶ 1} Relator, Denise L. Shreck ("relator"), commenced this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total *Page 2 
disability ("TTD") compensation beginning October 20, 2006, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who considered the action on its merits and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined that the commission's order denying TTD compensation beginning October 20, 2006, was flawed in that its order improperly altered the burden of proof and required relator to disprove a negative (i.e., show that a disallowed arthritis condition did not cause disability) and required her to show a change in her medical status to continue her previously approved disability beyond October 19, 2006. The magistrate recommended the court grant relator's request for writ of mandamus.
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} Finding no error of law or other defect in the magistrate's decision we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein. In accordance with the magistrate's decision, a writ of mandamus is issued ordering the commission to award relator TTD compensation beginning October 20, 2006.
Writ of mandamus granted.
 KLATT and TYACK, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered September 6, 2007 IN MANDAMUS {¶ 5} In this original action, relator, Denise L. Shreck, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her temporary total disability ("TTD") compensation beginning October 20, 2006, and to enter an order granting said compensation. *Page 4 
Findings of Fact: {¶ 6} 1. On February 6, 2005, relator sustained an industrial injury while employed as an electrician apprentice for respondent McGraw Kokosing Construction Company, Inc. ("employer"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator jumped from the back of a van to the ground below, landing on both feet. The next day, relator experienced right knee pain while climbing stairs. Several days later, she experienced more right knee pain when the knee "locked up."
 {¶ 7} 2. The industrial claim is allowed for "sprain of right knee; popliteal synovial cyst, right; joint effusion right lower leg; right medial femoral condyle cartilage injury; right medial meniscus tear," and is assigned claim number 05-831905.
 {¶ 8} 3. In June 2005, relator underwent arthroscopic surgery of the right knee. Orthopedic surgeon Brian S. Cohen, M.D., performed a partial medial meniscectomy and a medial femoral chondroplasty.
 {¶ 9} 4. On February 20, 2006, relator moved for an additional allowance in the claim. Ultimately, following a May 24, 2006 hearing, a staff hearing officer ("SHO") disallowed the claim for "post traumatic arthritis, right knee."
 {¶ 10} 5. On August 15, 2006, attending physician Vikki Owen, D.O., completed a C-84 certifying TTD from August 30, 2006 to an estimated return-to-work date of October 21, 2006. The C-84 form asks the attending physician to "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response, Dr. Owen listed only "844.9" which is the ICD-9 code for the allowed condition "sprain of right knee." *Page 5 
 {¶ 11} The C-84 form also asks the attending physician to state the objective and subjective clinical findings that are the basis for the recommendation for compensation. In response, Dr. Owen wrote: "[s]ame" for her objective findings. For the subjective findings, Dr. Owen wrote: "[patient] scheduled for surgery 8-18-06."
 {¶ 12} 6. On August 18, 2006, relator underwent a second right knee surgery performed by Dr. Cohen. Dr. Cohen's operative report describes the procedure as "[r]ight knee arthroscopy, debridement." The post-operative diagnosis is stated to be "[r]ight knee focal chondral defect, post traumatic arthritis."
 {¶ 13} 7. Five days after the surgery, on August 23, 2006, Dr. Cohen wrote:
 Denise comes in for follow-up of her right knee arthroscopy performed on the 18th. I reviewed the arthroscopic photos with her, which shows an increase in the amount of posttraumatic arthritis. The area is larger and she is starting to have exposed bone. At the time, a autograft transplantation would not cover the area. She still has pain that is localized to the medial side.
 I have recommended a osteochondral allograft transplantation. I discussed this with her and will continue to work with her on getting this approved. * * *
 {¶ 14} 8. On August 25, 2006, Dr. Cohen completed a C-9 form requesting authorization for "right knee osteochondral allograft transplantation."
 {¶ 15} 9. Earlier, the employer began payments of TTD compensation as of May 2, 2005. Payments continued to October 19, 2006 based upon C-84 reports, including Dr. Owen's C-84 dated August 15, 2006, as described above.
 {¶ 16} 10. On October 11, 2006, Dr. Owen completed another C-84. Like the previous C-84 dated August 15, 2006, Dr. Owen listed only ICD-9 code 844.9 as the allowed condition being treated which prevents return to work. For her objective clinical *Page 6 
findings, Dr. Owen again wrote "[s]ame," and for her subjective clinical findings, she wrote "waiting for surgery." On the C-84, Dr. Owen certified TTD from October 20, 2006 to an estimated return-to-work date of October 31, 2006.
 {¶ 17} 11. By letter dated October 19, 2006, the employer informed relator that the C-84 was denied. The letter explained "the requested surgery is for non-allowed conditions in the claim."
 {¶ 18} 12. On October 23, 2006, relator moved for payment on the C-84 from Dr. Owen dated October 11, 2006.
 {¶ 19} 13. On October 25, 2006, Dr. Cohen completed a C-84 certifying TTD from October 20, 2006 to an estimated return-to-work date of December 20, 2006. On the C-84, Dr. Cohen listed four ICD-9 codes as the allowed conditions being treated which prevent return to work. Those codes are "717.5," "844.9," "727.51" and "719.06."
 {¶ 20} In response to the queries regarding objective and subjective clinical findings, Dr. Cohen wrote "[patient] continues to have pain [and] problems associated with injury."
 {¶ 21} 14. Following a November 15, 2006 hearing, a district hearing officer ("DHO") issued an order denying the request for TTD compensation. The DHO's order explains:
 It is the order of the District Hearing Officer that the C-86 Motion filed by Injured Worker on 10/23/2006 is DENIED.
 Payment of temporary total disability compensation from 10/20/2006 up to and through today's date of hearing and to continue is denied. The 10/11/2006 C-84 submitted in support of the injured worker's request first indicates the objective findings supporting disability are "same." This suggests there has been no objective change in the injured *Page 7 
worker's allowed conditions demonstrating the onset of a temporary and total disability. Second, the C-84 indicates the subjective findings supporting disability are "waiting for surgery." This suggests that the injured worker's allowed conditions are stable and there will be no change in the status of said conditions until surgery is performed. Therefore, based on the C-84 it appears the allowed conditions are currently stable and there will be no change in the status of said conditions until and if surgery is performed. As such, this C-84 is insufficient to show the onset of a period of temporary and total disability and the request for temporary total disability compensation is denied.
(Emphasis sic.)
 {¶ 22} 15. Relator administratively appealed the DHO's order of November 15, 2006.
 {¶ 23} 16. On November 29, 2006, Dr. Cohen wrote:
 Denise comes in today for followup of her right knee. She is still having persistent problems with the knee. She has an accepted condition of cartilage injury. The osteochondral allograft which was recommended for treatment is not an accepted part of her claim. It is unclear to me why this has been denied. She requires this treatment to improve her condition.
 {¶ 24} 17. On November 20, 2006, Chalonda K. Hill, M.D., wrote:
 Subjective: Follow-up visit. Patient complaining of increased medial knee pain. Pain scale 4/10. Knee pain worse after 45-minute drive to the clinic. Dr Cohen saw patient on 11/29/06, who still recommends cartilage replacement. Patient is in the process of appealing recent denial of claim for this surgery.
 Objective: Positive tenderness to palpation over the medial aspect of the knee. Extension 0 degree, flexion 100 degrees, normal gait.
 Assessment: Right knee strain. *Page 8 
 {¶ 25} 18. Following a December 19, 2006 hearing, an SHO issued an order affirming the DHO's order of November 15, 2006. The SHO's order explains:
 Temporary total disability compensation from 10/20/2006 through 11/15/2006 (the date of the District Hearing), remains DENIED.
 The Staff Hearing Officer affirms the District Hearing Officer's conclusion that the claimant has failed to satisfy her burden of proving entitlement to the requested award.
 To establish entitlement to a period of temporary total disability compensation, the claimant must provide satisfactory and convincing evidence that she was both temporarily and totally disabled as a result of the allowed conditions in this claim. In this regard it is particularly noted that the claim has been disallowed for post traumatic arthritis, right knee. The C-84s which have been submitted in support of the request for compensation give as clinical findings, "continues to have pain and problems associated with injury." The earlier reports indicate that the claimant's objective findings are "same" and that she was "waiting for surgery." Claimant was initially authorized to have arthroscopic surgery which was undertaken but which was unsuccessful. She now seeks a 2nd arthroscopic surgery with use of a different type of graft. This request for 2nd surgery is currently in a denied status. Taken together there is insufficient evidence to conclude that the claimant's current disability is due to allowed conditions rather than the disallowed arthritis, and there is insufficient evidence to conclude that the claimant's disability is of a temporary rather than permanent status unless one assumes that the currently denied surgery will be approved. On this basis, the claimant has failed to satisfy her burden of proving entitlement to the requested award.
(Emphasis sic.)
 {¶ 26} 19. On January 4, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of December 19, 2006. *Page 9 
 {¶ 27} 20. On February 8, 2007, relator, Denise L. Shreck, filed this mandamus action.
Conclusions of Law: {¶ 28} The commission's order denying TTD compensation beginning October 20, 2006 is flawed in at least two respects by improperly requiring relator to show: (1) that the disallowed arthritis condition is not causing disability, and (2) a change in her medical status as required by claimants who, unlike relator, seek reinstatement of TTD following a determination of maximum medical improvement ("MMI").
 {¶ 29} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 30} State ex rel. Ignatious v. Indus. Comm., 99 Ohio St.3d 285,2003-Ohio-3627, is instructive as to the first flaw identified in the commission's order.
 {¶ 31} In Ignatious, the commission denied TTD compensation even though the claimant had supplied evidence of a direct causal relationship between his allowed neck conditions and his disability. The commission appeared to have denied TTD compensation on grounds that the claimant had failed to further show that his nonallowed carpal tunnel syndrome was not causing his inability to work. The court stated that the claimant is not "required to disprove a negative." Id. at ¶ 33.
 {¶ 32} Indicating that the commission had improperly altered the burden of proof, the Ignatious court explained:
 * * * In response to the bureau's request for clarification, Dr. Ruch supplied a January 9, 2001 C-84 and a May 18, 2001 letter. The former listed "neck pain" as the sole cause of *Page 10 
disability and the latter expressly to the allowed conditions of "sprain of neck and herniated discs C4-5 and C5-6." That the commission order continued even after these clarifications to rely on the presence of carpal tunnel syndrome to disqualify this evidence implies but one thing: that the evidence was deemed insufficient because it did not affirmatively state that carpal tunnel syndrome was not influencing claimant's inability to work. In tacitly requiring this, the commission overstepped its bounds.
Id.
 {¶ 33} Here, relator submitted a C-84 from Dr. Owen certifying TTD beginning October 20, 2006 based upon ICD-9 code 844.9 which is the code for the allowed "sprain of right knee." Relator also submitted a C-84 from Dr. Cohen that certified TTD beginning October 20, 2006 based upon ICD-9 codes which identify allowed conditions in the claim. Neither Dr. Owen nor Dr. Cohen listed a nonallowed condition as a cause of disability.
 {¶ 34} Nevertheless, the SHO's order of December 19, 2006 finds that the C-84s submitted by relator provide "insufficient evidence to conclude that the claimant's current disability is due to allowed conditions rather than the disallowed arthritis." That statement in the SHO's order is clearly improper given that the C-84s at issue list only allowed conditions as the cause of disability. The SHO's order concludes by stating "claimant has failed to satisfy her burden of proving entitlement to the requested award."
 {¶ 35} Thus, the SHO's order of December 19, 2006 strongly suggests that the SHO found the C-84s to be insufficient because relator's doctors failed to further opine that the nonallowed arthritis condition is not causing her inability to work. That is, the SHO's order required relator to disprove a negative, and it improperly altered the burden of proof. Ignatious. *Page 11 
 {¶ 36} As noted earlier, the commission's order is also flawed because it required relator to show a change in her medical status as required of claimants who, unlike relator, seek reinstatement of TTD following a determination of MMI.
 {¶ 37} Following the commission's termination of TTD compensation based upon a finding that the allowed conditions have reached MMI, the claimant has the burden of showing new and changed circumstances to obtain further TTD compensation. State ex rel. Josephson v. Indus.Comm., 101 Ohio St.3d 195, 2004-Ohio-737. The only new and changed circumstance sufficient to reinstate a worker to TTD compensation is the worsening of the allowed conditions accompanied by a prognosis that the worsening is only temporary. Id.
 {¶ 38} Case law indicates that reinstatement of TTD after a commission MMI determination can be based upon the claimant's need for surgery if the Josephson requirements are met. See State ex rel. Value City Dept.Stores v. Indus. Comm., 97 Ohio St.3d 187, 2002-Ohio-5810; State ex rel.Chrysler Corp. v. Indus. Comm. (1998), 81 Ohio St.3d 158, 169.
 {¶ 39} Here, there has never been a commission determination that any of the allowed conditions of the claim have reached MMI. Moreover, relator's October 23, 2006 motion for payment on the C-84 was, in effect, a motion for the continued payment of TTD compensation following the employer's unilateral decision to cease payments. Nevertheless, the DHO's order of November 15, 2006, which was administratively affirmed, inappropriately refers to October 20, 2006 as the claimed "onset" of disability, and it inappropriately suggests that relator carried a burden to show a change in her *Page 12 
medical status to continue her period of disability beyond October 19, 2006, when that date is simply the last date of payment of compensation by the self-insured employer.
 {¶ 40} Likewise, the SHO's order of December 19, 2006 inappropriately determines that the evidence is insufficient to show that the disability "is of a temporary rather than permanent status unless one assumes that the currently denied surgery will be approved." Clearly, relator was not required to show that she met the Josephson requirements applicable to requests for reinstatement of TTD following an MMI determination.
 {¶ 41} The magistrate notes that in Ignatious, the court issued a full writ of mandamus. That relief is appropriate here. As inIgnatious, all of the evidence attributes relator's inability to work to the allowed conditions only.
 {¶ 42} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to award TTD compensation beginning October 20, 2006. *Page 1