DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Cheryl L. Richey, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for temporary total disability ("TTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate found that the commission relied upon the reports of Drs. Canestri and Ray, as well as the Deaconess Surgery Center. Dr. Canestri opined that relator's current conditions were not directly related to her industrial injury and her allowed conditions in the claim. Although there was conflicting medical evidence presented, there was some evidence to support the commission's order. Therefore, the magistrate has recommended that we deny the requested writ of mandamus.
 {¶ 3} Relator has filed objections to the magistrate's decision essentially arguing that the magistrate should have found the commission abused its discretion in determining that relator's disability was not related to the allowed conditions in her claim. However, as noted by the magistrate, there was some evidence to support the finding that the requested period of disability was not caused by the allowed conditions in relator's claim. Nor did the commission require relator to meet a higher burden of proof. The commission simply exercised its discretion in assessing conflicting medical evidence. The commission has the exclusive authority to evaluate evidentiary weight and credibility.
 {¶ 4} Relator also argues that State ex rel. Ignatious v.Indus. Comm., 99 Ohio St.3d 285, 2003-Ohio-3627, requires a different result. We disagree. In Ignatious, the treating doctor was treating the claimant for both an allowed and non-allowed condition. The court held that having supplied evidence of a direct causal relationship between the allowed condition and the disability which was unrebutted, the claimant was not required to further show that the non-allowed condition was not the cause of the inability to work. Unlike the case at bar, Ignatious did not involve conflicting evidence on the question of whether relator's disability was caused by the allowed condition. Therefore, the holding in Ignatious is inapplicable.
 {¶ 5} Last, relator argues that the evidence before the commission did not support the commission's order. Again, we disagree. Dr. Canestri opined that relator's current disability, which arose one year after the date of injury, was not related to her industrial injury and her allowed conditions in the claim. The commission has the exclusive authority to evaluate evidentiary weight and credibility and this evidence supports the commission's order.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therefore. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Cheryl L. Richey, : Relator, : v. : No. 03AP-601 Industrial Commission of Ohio : (REGULAR CALENDAR) and Beverage King Drive Thru, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 11, 2003 IN MANDAMUS {¶ 7} Relator, Cheryl L. Richey, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation and ordering the commission to pay her the requested compensation.
 Findings of Fact {¶ 8} 1. Relator sustained a work-related injury on August 28, 2000, and her claim has been allowed for: "right sprain of wrist, right elbow abrasion, right hip thigh sprain, sprain of sacrum." Relator returned to work after three days.
 {¶ 9} 2. In April 2001, relator was seen by her treating physician Stephen T. Autry, M.D., complaining of increased discomfort in her right posterolateral buttock and thigh area with discomfort down her leg. Dr. Autry noted as follows:
From a clinical standpoint, at this juncture, the majority of Ms. Richey's symptoms appear to be coming from the lower lumbar area. It is conceivable that a strain or contusion to the hip area, particularly if this was symptomatic to the degree of effecting gait, could create a delayed onset of a lumbosacral strain type syndrome. The findings on X-ray are of a concern and I do believe need to be further clarified.
Dr. Autry recommended a program of diagnostic review, including an MRI. He prescribed anti-inflammatory medications for her.
 {¶ 10} 3. An MRI was performed on April 20, 2001, and the results were essentially normal. Some desiccation and narrowing of the L5-S1 disc was present; however, there was no evidence of herniated disc or spinal stenosis.
 {¶ 11} 4. On July 6, 2001, a fluoroscopy was performed to provide relator with a lumbar epidural steroid injection at L5-S1. The postoperative diagnosis was: "Degenerative lumbar disc disease at L5-S1. * * * Chronic low back pain radiating into the right leg."
 {¶ 12} 5. Dr. Autry then took relator off work and referred her to a second physician for consultation, specifically noting that relator was to remain off work until the consultation was completed. Dr. Autry subsequently completed a C-84 request for temporary total benefits on September 18, 2001, certifying temporary total disability from August 29, 2001 through an estimated return-to-work date of October 29, 2001.
 {¶ 13} 6. On October 5, 2001, Dr. Canestri performed a physician review of relator's records to address the question of whether the evidence supported a period of disability as claimed. Dr. Canestri opined that the medical records did not support the requested period of disability as being related to the industrial injury and the allowed conditions in the claim. Referring to Dr. Autry's C-84, Dr. Canestri noted that Dr. Autry indicated that relator has low back pain with spasms; however, he noted that the mechanism of injury in the initial medical evaluation did not indicate that relator had any low back symptoms. Dr. Canestri pointed out the gap in medical documentation from September 2000 through April 2001 and noted that there was no evidence in the record of low back discomfort until April 2001. He noted further that the allowed conditions should have healed in this eight to 12 week period. As such, Dr. Canestri concluded that the period of TTD compensation was not supported by medical documentation for the allowed conditions.
 {¶ 14} 7. Relator was examined by Gary Ray, M.D., on October 22, 2001. Dr. Ray indicated that relator was experiencing low back pain radiating down the right leg to the knee area as well as numbness in her right lower leg. Inasmuch as other treatments, including medications, physical therapy, and epidural steroid injections had not significantly improved her condition, Dr. Ray referred her to a chiropractor.
 {¶ 15} 8. Relator was referred to Errol J. Stern, M.D., who indicated that relator's diagnosis was still consistent with a right hip bursitis, right hip strain, and right sacroiliac strain, with significant difficulties related to those strains and that relator was not capable of resuming work-related activities at the present time.
 {¶ 16} 9. Relator's application for TTD compensation was heard before a district hearing officer ("DHO") on April 22, 2002, and resulted in an order denying the requested compensation. The DHO concluded that relator's disability during this time period was not related to the allowed conditions from the August 2000 industrial injury. The DHO noted that relator had worked for one year after the injury date and that there was no explanation given by Dr. Autry explaining why relator had become totally disabled one year after the injury. In denying TTD compensation, the DHO relied upon the report of Dr. Canestri.
 {¶ 17} 10. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on July 26, 2002. The SHO modified the prior DHO order and concluded as follows:
The Staff Hearing Officer finds claimant's disability from 8/29/01 to 3/10/02 and continuing is not casually related to industrial injury of dated [sic] and previously recognized conditions in the claim.
The Staff Hearing Officer finds that claimant's disability for this period is due to conditions not allowed in claim.
This order is based on reports of Dr. Canestri dated 10-5-01, Dr. Ray dated 10-22-01 and Deaconess Surgery center dated 7-6-01.
The decision of District Hearing Officer dated 4-25-02 is affirmed in all other respects.
 {¶ 18} 11. Further appeal was refused by order of the commission dated August 23, 2002.
 {¶ 19} 12. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 21} In order to receive TTD compensation, a claimant must establish that he/she is unable to return to his/her former position of employment as a direct result of the industrial injury. State ex rel. Pretty Products, Inc. v. Indus. Comm.
(1996), 77 Ohio St.3d 5. It is not an abuse of discretion for the commission to deny TTD benefits based upon the lack of probative or credible evidence. State ex rel. Thomas v. Indus. Comm.
(1989), 42 Ohio St.3d 31.
 {¶ 22} In the present case, although relator did produce medical evidence from her physicians who opined that the period of TTD compensation was directly related to the industrial injury, the commission also had evidence before it indicating that the period of TTD compensation was not a direct result of the allowed conditions in the claim. The commission further noted that no explanation was provided concerning how relator became disabled, for the first time, one year after the date of injury. Specifically, the commission relied upon the reports of Drs. Canestri and Ray, as well as the Deaconess Surgery Center. As indicated earlier, Dr. Canestri opined that relator's current conditions were not directly related to her industrial injury and her allowed conditions in the claim. In his October 22, 2001 report, Dr. Ray noted that relator's primary impairment was "malalignment" that could be treated by a chiropractor. Furthermore, the results of the thorascopy performed at Deaconess Surgery Center indicated as a post-operative diagnosis, "[d]egenerated lumbar disc disease at L5-S1."
 {¶ 23} In State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575, the Ohio Supreme Court rejected the assertion that a treating physician's report is entitled to enhanced weight. Pursuant to State ex rel. Burley v. Coil Packing, Inc.
(1987), 31 Ohio St.3d 18, the commission has the exclusive authority to evaluate evidentiary weight and credibility. In the present case, the commission cited the evidence upon which it relied, which evidence indicated that the requested period of TTD compensation was due to nonallowed conditions. Furthermore, the commission explained its rationale and the order meets the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 24} Relator asserts that she unequivocally met her burden of proving that the requested period of TTD compensation was due to the allowed conditions. Relator cites State ex rel. Ignatiousv. Indus. Comm. 99 Ohio St.3d 285, 2003-Ohio-3627, in support. In Ignatious, the claimant's claim was allowed for: "sprained neck and herniated discs C4-5 and C5-6." One year later, claimant underwent surgery for those conditions and began receiving TTD compensation. Post-surgery, his treating physician, Dr. Ruch, released him to return to work with restrictions then, one month later, indicated claimant could not return to work until after she obtained an MRI and EMG. The findings supported continuing problems in his cervical area. The nerve conduction study also showed bilateral carpal tunnel. Dr. Ruch completed a new C-84 certifying claimant was temporarily totally disabled due to the allowed cervical conditions per her office notes. Because her office notes included treatment regarding the carpal tunnel, Dr. Ruch was asked to clarify why claimant was unable to work. Dr. Ruch indicated that claimant was totally disabled due to the allowed cervical condition. The commission ultimately concluded that claimant's disability was due to the nonallowed condition of carpal tunnel and cited Dr. Ruch's C-84.
 {¶ 25} On appeal, the Ohio Supreme Court ultimately granted a writ of mandamus and stated as follows:
No one disputes claimant's responsibility to establish a causal relationship between his allowed conditions and the claimed disability. He is not, however, required to disprove a negative. Having supplied evidence of a direct causal relationship between his allowed neck conditions and his disability, he is not required to further show that his carpal tunnel syndrome is not causing his inability to work. Yet upon review, this is what the commission indeed appears to have done. In response to the bureau's request for clarification, Dr. Ruch supplied a January 9, 2001 C-84 and a May 18, 2001 letter. The former listed "neck pain" as the sole cause of disability and the latter expressly to the allowed conditions of "sprain of neck and herniated discs C4-5 and C5-6." That the commission order continued even after these clarifications to rely on the presence of carpal tunnel syndrome to disqualify this evidence implies but one thing: that the evidence was deemed insufficient because it did not affirmatively state that carpal tunnel syndrome was not influencing claimant's inability to work. In tacitly requiring this, the commission overstepped its bounds.
Id. at ¶ 33.
 {¶ 26} This case differs from Ignatious. In Ignatious,
the commission dissected one report to conclude that a nonallowed condition rendered the claimant disabled. By comparison, in the present case, there is evidence that relator's period of disability is due to nonallowed conditions. The commission had before it conflicting medical evidence and relied upon evidence contrary to relator's physician.
 {¶ 27} Based upon the foregoing, this magistrate concludes that the commission's order denying relator's application for TTD compensation is supported by some evidence in the record and otherwise meets the requirements of the law. As such, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her award of TTD compensation and this court should deny relator's request for a writ of mandamus.