[Cite as *State ex rel. Altercare of Hartville Ctr., Inc. v. Ford*, 2021-Ohio-4088.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Altercare of Hartville Center, Inc., | : | |
| | : | |
| Relator, | : | No. 20AP-165 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| Erica Ford et al., | : | |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on November 18, 2021

**On brief**: *Morrow & Meyer, LLC*, and *Tod T. Morrow*, for relator.

**On brief**: *Mario Gaitanos*, for respondent Erica Ford.

**On brief**: *Dave Yost*, Attorney General, *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Altercare of Hartville Center, Inc. ("Altercare"), brings this original action in mandamus seeking an order compelling respondent the Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Erica Ford and to enter an order denying such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends this court deny

Altercare's request for a writ of mandamus. Altercare has filed the following objections to the magistrate's decision:

> I.     The Magistrate Erred In Finding That The PTD Order Contained Sufficient Detail To Permit Meaningful Review.
>
> II.    The Magistrate Erred By Failing To Address The Issue Of Whether The PTD Order Conflicted With Previous Industrial Commission Orders That Found The Claimant's Psychological Treatment Was Directed At Pre-Existing And Unrelated Psychological Conditions.
>
> III.   The Magistrate Erred By Ignoring Relator's Argument That The PTD Order Is Based Upon Medical Reports That Merely Give Conclusory Statements That The Claimant Is Psychologically Incapable Of Performing Sustained Remunerative Employment.
>
> IV.    The Magistrate Erred By Finding That The Medical Reports Cited In The PTD Order Sufficiently Differentiated Between Pre-Existing And Non-Allowed Psychological Conditions And The Allowed Psychological Condition.
>
> V.     The Magistrate Erred In Denying The Writ Of Mandamus Even Though The Order Granting PTD Was Based Upon Medical Reports That Are Directly Contradicted By Surveillance Video Evidence.

{¶ 3} On July 1, 2006, Ford sustained a work-related injury during the course of her employment with Altercare. Ford's workers' compensation claim was originally allowed for sprain lumbar region; herniated disc L5-S1; post dural headaches; compression of the anteromedial aspect of the left S-1 root sleeve and inferior migration of extruded material measuring 3-4 mm and caudal migration by a maximum of 4 mm at L5-S1 level; radiculopathy S-1. Subsequently, Ford's claim was additionally allowed for generalized anxiety disorder ("GAD") and depressive disorder, NEC.

{¶ 4} On October 18, 2018, Ford filed an application for PTD compensation. Ford supported her application with the June 14, 2018 report from Kanubhai Patel, M.D. and the April 30, 2018 report from James M. Lyall, Ph.D. Following a September 20, 2019 hearing, a staff hearing officer ("SHO") granted Ford's application. The SHO relied on Dr. Patel's June 14, 2018 report, Dr. Lyall's April 30, 2018 report, a February 23, 2018 report

from Michael Faust, Ph.D., and a June 10, 2019 report from Douglas Pawlarczyk, Ph.D. to find Ford permanently and totally disabled solely as a result of the allowed psychological conditions of her claim.

{¶ 5}   The magistrate determined the commission did not abuse its discretion by relying on the evidence cited in the SHO's decision and issuing the order granting Ford PTD compensation. The magistrate noted that Altercare had not identified any mistake of law or fact which would preclude consideration of the reports from Drs. Patel, Lyall, Faust or Pawlarczyk.

{¶ 6}   Altercare's first objection asserts the magistrate erred by finding the commission's order contained sufficient detail to permit meaningful review. When reviewing a claim for a writ of mandamus in a workers' compensation case, a court's role is to determine whether the commission has abused its discretion. *State ex rel. Pacheco v. Indus. Comm.*, 157 Ohio St.3d 126, 2019-Ohio-2954, ¶ 7; *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987), syllabus. "So long as the commission's order is based on some evidence in the record, a court should not find an abuse of discretion." *Pacheco* at ¶ 7, citing *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20.

{¶ 7}   An order from the commission granting or denying benefits to a claimant "must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 206 (1991). An order from the commission complies with *Noll* if it: (1) specifies the evidence upon which the commission relied, and (2) explains the reasoning the commission used to reach its decision in such a manner as to enable meaningful judicial review. *State ex rel. Renomer v. Indus. Comm.*, 71 Ohio St.3d 134, 137 (1994), citing *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994).

{¶ 8}   The SHO expressly relied on the reports of Drs. Patel, Lyall, Faust, and Pawlarczyk to grant Ford's PTD application. The SHO explained that these reports supported the PTD order, as the "mental health providers indicate[d] the Injured Worker [was] incapable of sustained remunerative employment and [was] permanently and totally disabled solely as a result of the allowed psychological conditions in this claim." (SHO Decision at 1.)  Our review of the cited medical reports demonstrates that each doctor found Ford incapable of working based solely on the allowed psychological conditions. When the commission's finding is "consistent with the conclusions reached by the doctors, no further

explanation as to why [the commission] was relying upon the doctors' reports was necessary." *State ex rel. Hicks v. Indus Comm.*, 10th Dist. No. 04AP-1359, 2005-Ohio-5535, ¶ 7.

{¶ 9} Altercare contends that its remaining objections to the magistrate's decision "undercut the reliability of the Claimant's medical evidence." (Relator's Obj.'s at 10.) However, "[t]he commission is the exclusive evaluator of the weight and credibility to be given medical reports of record, and reviewing courts cannot second-guess the commission's credibility determinations in mandamus." *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158, 166 (1998), citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996). *Accord State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981). As such, this court's review "extends only to whether some evidence exists for the commission's decision; after that, courts must defer to the commission's determination." *Chrysler Corp.* at 166.

{¶ 10} The commission found the reports from Drs. Patel, Lyall, Faust, and Pawlarczyk credible, as it was entitled to do. The commission's order granting Ford's application for PTD compensation complied with *Noll*, as the order identified the evidence relied on and explained the reasoning for its conclusion that Ford was permanently and totally disabled. As the cited medical reports constituted some evidence to support the commission's order, Altercare fails to demonstrate the commission abused its discretion. Altercare's first objection is overruled.

{¶ 11} Altercare's second objection asserts the magistrate erred by failing to address whether the commission's order awarding Ford PTD compensation conflicted with the commission's earlier order denying a request for authorization of medical services. The magistrate addressed this argument and concluded that the "rejection of a prior request for treatment [was] not controlling in the commission's ultimate decision to grant PTD." (Appended Mag. Decision at ¶ 51.) We agree with the magistrate.

{¶ 12} To receive PTD compensation, a claimant must: (1) demonstrate an inability to perform sustained remunerative employment, and (2) causally relate that inability to the claimant's allowed conditions. *State ex rel. LTV Steel Co. v. Indus. Comm.*, 65 Ohio St.3d 22, 23 (1992), citing *State ex rel. Jennings v. Indus. Comm.*, 1 Ohio St.3d 101 (1982). In considering requests for authorization of medical services, courts apply the following test: (1) are the requested medical services reasonably related to the allowed conditions, (2) are

the services reasonably necessary for treatment of the industrial injury, and (3) are the costs of the requested services medically reasonable. *State ex rel. Keith v. Indus. Comm.*, 10th Dist. No. 06AP-1095, 2007-Ohio-5083, ¶ 13, citing *State ex rel. Jackson Tube Servs. v. Indus. Comm.*, 99 Ohio St.3d 1, 2003-Ohio-2259. Thus, a decision denying a request for authorization of medical services has no bearing on the question of a claimant's ability to engage in sustained remunerative employment.

{¶ 13} Altercare contends the commission's denial of the request for authorization of medical treatment demonstrated that Dr. Patel's treatment of Ford was "unrelated to the 2006 Claim." (Relator's Obj.'s at 15.)  In the C-9 request for authorization of medical services, Dr. Patel sought reimbursement for seven office visits involving psychotherapy and psychiatric medication management. The commission's order denying the request for authorization relied on a March 16, 2018 report from Mark E. Reynolds, M.D.  Dr. Reynolds' report concluded that, although the requested services were "reasonably related to the work injury," they were not reasonably necessary for the treatment of the industrial injury as there were "multiple issues contributing to [Ford's] symptoms and being addressed in therapy that are not related to the allowed conditions of the claim." (Stip. at 160-61.) Dr. Reynolds' report demonstrated that Dr. Patel was treating Ford's allowed conditions of GAD and depressive disorder, as well as Ford's other conditions such as insomnia and attention deficit and hyperactive disorder.

{¶ 14} The commission's denial of the request for authorization of medical services demonstrated only that the commission found the seven requested office visits not reasonably necessary for the treatment of Ford's allowed conditions. The ruling did not indicate that all of Dr. Patel's treatment of Ford was unrelated to the allowed conditions. Moreover, the fact that Dr. Patel was treating both Ford's allowed and non-allowed conditions did not preclude him from opining that Ford was permanently and totally disabled solely as a result of the allowed conditions.  Altercare's second objection is overruled.

{¶ 15} Altercare's third objection asserts the magistrate ignored Altercare's argument that the commission's PTD order was based on medical reports containing conclusory statements. However, the magistrate thoroughly addressed the medical reports relied on by the commission. As the magistrate's discussion of those reports demonstrates, the doctors provided more than mere conclusory statements finding Ford permanently and

totally disabled. Altercare's contention that the medical reports contained only conclusory statements essentially questions the weight and credibility of the medical reports. *See Hicks* at ¶ 6 (finding relator's argument that the medical "reports contained only conclusory statements * * * essentially question[ed] the credibility and weight of the evidence"). Such determinations, however, are within the exclusive discretion of the commission as the finder of fact. *Chrysler Corp.* at 166; *Teece.* Altercare's third objection is overruled.

{¶ 16} Altercare's fourth objection asserts the magistrate erred by finding the medical reports sufficiently differentiated between allowed and non-allowed conditions. The magistrate concluded that the medical reports limited their "consideration of Ford's ability to work solely to the allowed conditions, even where the reports acknowledge other factors affecting Ford's health." (Appended Mag. Decision at ¶ 50.)

{¶ 17} "Entitlement to [PTD] compensation requires a showing that the medical impairment due to the allowed conditions, either alone or together with nonmedical disability factors, prevents claimant from engaging in sustained remunerative employment." *LTV Steel Co.* at 24. An injured worker cannot receive PTD compensation when they are unable to work due to impairments which "are not the result of an allowed injury or occupational disease." R.C. 4123.58(D)(1). *Accord State ex rel. Fields v. Indus. Comm.*, 66 Ohio St.3d 437, 440 (1993) (stating that the commission may not "base an award of permanent total disability on non-allowed medical conditions, in whole or in part").

{¶ 18} However, the mere "presence of nonallowed disabling conditions does not automatically foreclose a finding of permanent total disability." *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452, 458 (1993). So long as the claimant's allowed conditions prevent sustained remunerative employment, a claimant will not be "penalized in a permanent total disability determination simply because he or she is unfortunate enough to have other health problems." *Id.* at 457-58. Thus, when a claimant has non-allowed conditions, they must demonstrate that the "allowed condition independently caused the disability." *State ex rel. Bradley v. Indus. Comm.*, 77 Ohio St.3d 239, 242 (1997).

{¶ 19} As the magistrate found, the four medical reports sufficiently limited their consideration of Ford's ability to work solely to the allowed psychological conditions. Dr. Faust's report acknowledged Ford's "significant symptoms of a panic disorder with associated social anxiety and agoraphobia" and concluded that Ford's "condition [was]

more severe related to these additional [non-allowed] conditions." (Stip. at 173.) However, Dr. Faust specified that Ford's allowed conditions of "depressive disorder NEC and GAD [were] sufficient to render her unable to work and [he] only addressed these in reviewing this question." (Stip. at 173.)

{¶ 20} Dr. Patel's report stated that Ford was "permanently and totally disabled from any type of sustained remunerative employment based solely on the conditions for which [he was] providing treatment," and the report addressed only Dr. Patel's treatment of Ford's "recognized conditions of Generalized Anxiety Disorder and Depressive Disorder NEC." (Stip. at 134.) Dr. Lyall stated that Ford was unable to engage in sustained remunerative employment "due exclusively to the allowed psychological conditions." (Stip. at 136.)

{¶ 21} Altercare notes that Dr. Pawlarczyk's report discussed the mental health conditions Ford had prior to her industrial injury. However, "[a] preexisting condition is not a preexisting disability, where the claimant worked without any apparent problems prior to the [industrial] injury." *State ex rel. Consolidation Coal Co. v. Indus. Comm.*, 78 Ohio St.3d 176, 178 (1997), citing *State ex rel. Kettering Med. Ctr. v. Wallace*, 68 Ohio St.3d 588, 589 (1994). Furthermore, where a medical report attributes a claimant's impairment to the allowed conditions, "there is no requirement that a physician specifically indicate that a nonallowed condition was not part of his or her conclusion." *Id.* Although Dr. Pawlarczyk acknowledged Ford's other conditions, he expressly found Ford "incapable of work" based "solely on impairment resulting from the allowed mental and behavioral condition(s)." (Stip. at 90.) Altercare's fourth objection is overruled.

{¶ 22} Altercare's fifth objection asserts the magistrate erred by denying the requested writ of mandamus because surveillance video evidence contradicted the medical reports. Altercare presented surveillance video evidence in opposition to Ford's PTD application. The surveillance video documented Ford going to medical appointments, the bank, ordering fast food, picking up prescriptions, and shopping at Target and Cracker Barrel on three separate days. The surveillance demonstrated that Ford did not leave her home at all on two separate days.

{¶ 23} The magistrate found the results of the surveillance operation "hardly supportive of [Altercare's] desired conclusion, given the limited range of activities observed therein." (Appended Mag. Decision at ¶ 51.) We agree with the magistrate. The activates

depicted on the surveillance video do not contradict the doctors' conclusions that Ford was unable to work solely as a result of her allowed psychological conditions. Altercare's contention that the surveillance video rendered the medical reports unreliable again questions the weight and credibility of the evidence, which are matters within the commission's exclusive discretion. *Chrysler Corp.* at 166; *Teece.*

{¶ 24} Altercare also asserts that the commission's failure to address the surveillance video in its PTD order violated *Noll.* However, "[t]he commission is not required to list all the evidence that it considered in its order, but only that which it relied upon to reach its conclusion." *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 14, citing *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.*, 79 Ohio St.3d 73, 77 (1997). Thus, the commission is not required to explain "why one piece of evidence was considered more persuasive than another." *State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, ¶ 26, citing *State ex rel. Bell v. Indus. Comm.*, 72 Ohio St.3d 575, 577 (1995). The commission's order complied with *Noll* as it identified the four medical reports it relied on to find Ford permanently and totally disabled. The commission was under no obligation to discuss the surveillance video or explain why it found the surveillance video unpersuasive. Altercare's fifth objection is overruled.

{¶ 25} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, Altercare's five objections are overruled and we deny Altercare's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

KLATT and MENTEL, JJ., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Altercare of Hartville Center, Inc.,:

      Relator,                         :

v.                                      :            No.  20AP-165

Erica Ford et al.,                  :        (REGULAR CALENDAR)

      Respondents.           :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 25, 2021

---

*Morrow & Meyer*, *LLC,* and *Tod T. Morrow,* for relator.

*Mario Gaitanos,* for respondent Erica Ford.

*Dave Yost,* Attorney General, *Lauren A. Kemp,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 26} Relator, Altercare of Hartville Center, Inc. ("Altercare"), brings this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent, Erica Ford, and enter an order denying such compensation. Findings of Fact:

{¶ 27} 1. Ford worked as a nurse's aide with Altercare.  On July 1, 2006, Ford sustained injuries in the course of her employment while lifting a nursing home resident.

{¶ 28} 2.  Ford's claim was initially allowed for "sprain lumbar region; herniated disc L5-S1; post dural headaches; compression of the anteromedial aspect of the left S-1 root sleeve and inferior migration of extruded material measuring 3-4mm and caudal migration

by a maximum of 4mm at L5-S1 level; radiculopathy S1." (Stip. at 10.) Subsequently, claims were allowed for additional conditions of generalized anxiety disorder and depressive disorder, NEC. (Stip. at 221.)

{¶ 29} 3. After an initial denial at the district hearing officer ("DHO") level, a staff hearing officer ("SHO") issued an order mailed July 31, 2015 granting temporary total disability ("TTD") commencing December 31, 2014 based on the allowed conditions. (Stip. at 217.)

{¶ 30} 4. TTD terminated upon an administrator's motion granted in a DHO order mailed April 25, 2018 finding that Ford had reached maximum medical improvement ("MMI") as of April 18, 2018.

{¶ 31} 5. Ford filed her application for PTD on October 18, 2018. Ford supported her application with reports from two physicians treating her psychological conditions. (Stip. at 133.)

{¶ 32} 6. Kanubhai Patel, M.D., a psychiatrist, described his treatment and conclusions in a letter dated June 14, 2018:

> Erica Ford has been under my care since July 20, 2015 for the psychiatric treatment of her recognized conditions of Generalized Anxiety Disorder and Depressive Disorder NEC. She is seen for appointments at the frequency of once every four weeks that consist of medication management with psychotherapy add-on. She also participates in individual Psychotherapy with a provider at another practice. I am currently prescribing Ms. Ford the following medications for the treatment of her allowed conditions.
>
> Cymbalta 60mg 2Qam 1 Qhs
> Seriquel 100 mg BID
> Valium 10mg 1/2BID 1 Qhs
> Adderall XR 20mg Qam Q 1pm
>
> In spite of comprehensive treatment, Ms. Ford remains depressed and anxious. She consistently presents to appointments with a depressed mood and is often emotional and cries during her appointments. She is withdrawn and rarely leaves her home. She experiences sleep disturbances, feelings of hopelessness and helplessness, impaired concentration, and an extremely poor tolerance for coping with stress. She has pain on a daily basis.
>
> Based on Ms. Ford's debilitating psychological symptoms, it is my opinion within a reasonable degree of medical certainty

that Erica Ford is permanently and totally disabled from any type of sustained remunerative employment based solely on the conditions for which I am providing treatment.

(Stip. at 134.)

{¶ 33} 7. James M. Lyall, Ph.D., a board-certified neuro psychologist, furnished the following description and opinion arising from his treatment of Ford:

In response to your request for further information about our treatment of Ms. Ford, I am writing this letter. Please note that in preparation for this letter, I reviewed a psychological evaluation conducted by Dr. Faust and dated February 23, 2018. I also discussed Ms. Ford's treatment in our office with the treating counselor, Ms. Rhonda French. It is clear from talking with the treating counselor that Ms. Ford continues to be very depressed and anxious. She is also receiving psychiatric care with medication. She continues to have trouble sleeping, scatter thinking and trouble with decision making. She also experiences numerous crying spells. In further reviewing Dr. Faust's report, it is clear on page twelve of this report that the claimant is incapable of sustained remunerative employment at this time. He states her condition is more severe related to these additional conditions that are not part of the claim but her symptoms of the Depressive Disorder NEC and GAD are sufficient to render her unable to work and I only address these in reviewing this question.

I am in agreement with Dr. Faust that the claimant is unable to engage in regular remunerative employment due solely to the psychological conditions allowed in the Workers' Comp. claim and allowed physical difficulties. Taking this into account and to a reasonable degree of psychological certainty, it is this psychologist's opinion that the claimant is unable to engage in regular remunerative employment and as a result is permanently and totally disabled due exclusively to the allowed psychological conditions to the whole body. I hope you find this information useful. If I can provide further information about our treatment of Ms. Ford, please let us know.

(Stip. at 135-36.)

{¶ 34} 8. Donald J. Tosi, Ph.D., evaluated Ford on behalf of Altercare. Dr. Tosi examined Ford and reviewed her medical history. Dr. Tosi identified medical conditions predating Ford's workplace injury, including attention deficit hyperactivity disorder

("ADHD"), essential tremors, and migraine headaches. Dr. Tosi noted that Ford described pre-injury prescriptions for Xanax and Zoloft by her family physician and two days in a crisis center in 2001 or 2002. (Stip. at 116.) Dr. Tosi also noted several "unrelated life stressors," including financial stress, identify theft, a sexual assault, three rapes in 1995, and an abusive relationship in 1994. (Stip. at 118.) Dr. Tosi nonetheless concluded that Ford was not incapable of sustained remunerative employment with accommodations:

> Adaption (ability to respond appropriately to changes in the work place): The Injured Worker is able to maintain attendance, influence people, perform the normal duties of her former job or another job within restrictions, use public transportation, use her own transportation, be aware of normal hazards, follow safety procedures, set realistic goals, deal with supervisors, deal with coworkers, make judgments, plan, and work under specific instructions. The Injured Worker is aware of safety issues. She is able to follow normal directions. She requires normal supervision. Restrictions or limitations are primarily physical. Work tasks should be simple to moderate in complexity. She is not at risk in the workplace.
>
> * * *
>
> Specific to the allowed psychological conditions resulting from the 7/1/2008 injury the Injured Worker is capable of returning to remunerative employment in any capacity. There are no psychological restrictions.
>
> * * *
>
> The Injured Worker is not permanently and totally disabled from all forms of sustained remunerative employment as a direct and sole result of the allowed psychological conditions in this claim. See my responses to previous questions for explanation.

(Stip. at 117-18, 120.)

{¶ 35} 9. Ford was examined on behalf of the commission by psychologist Douglas J. Pawlarczyk, Ph.D. Dr. Pawlarczyk stated that "both her psychotherapist and numerous psychological evaluations over time indicate that she has consistently demonstrated significant symptoms of both depression and anxiety and that there has been little change in her functioning." (Stip. at 87.) Dr. Pawlarczyk concluded that Ford was incapable of work based on the allowed psychological conditions. (Stip. at 88, 90.)

{¶ 36} 10. William T. Darling, Ph.D., a specialist in rehabilitation education, produced a report dated June 6, 2018 that assessed Ford's vocational options and capacity to return to sustained remunerative employment.  Dr. Darling reviewed Ford's medical records, employment history, education, and local employment conditions to conduct a transferable skills analysis.  Dr. Darling concluded that Ford was able to return to work with appropriate restrictions: "[I]t is my professional opinion that someone of Erica Ford's vocational and industrial-injury profile, if so motivated, should be considered capable of sustained, remunerative employment in positions commensurate with her current capabilities and presumed restrictions.  As such, I would not consider her to be permanently, totally disabled."  (Stip. at 29.)

{¶ 37} 11. To oppose the PTD application, Altercare engaged a surveillance service which recorded Ford as she engaged in various activities on three different days, including driving to the bank, fueling her car at a self-service pump, ordering food at a drive through, and shopping at a department store and specialty store while carrying a basket with items in it.

{¶ 38} 12. Ford's PTD application provides a personal history in which she states that she obtained a bachelor's degree in nursing after her injury in 2009 and had repeatedly sought employment in her field thereafter but had in no case been able to maintain employment past a probationary period.

{¶ 39} 13. Altercare also presented for consideration a prior denial by the Ohio Bureau of Workers' Compensation ("BWC") of Ford's request for authorization of psychiatric medication management and psychotherapy sessions.  This denial was based on a March 16, 2018 report by Mark E. Reynolds, M.D., a psychiatrist who did not examine Ford but extensively reviewed her treatment records.  Dr. Reynolds had concluded that the information reviewed did not support coverage of the requested services, because information in the history indicated that there were multiple issues contributing to Ford's symptoms that were not allowed conditions of the claim.  (Stip. at 161.)

{¶ 40} 14. Ford attempted to rebut introduction of Dr. Reynolds' report with a further opinion from Dr. Patel, who stated that his treatment of Ford was based on her symptoms of depression and anxiety, as well as frustration and discouragement stemming from her back pain and limitations secondary to her allowed injury.  (Stip. at 149.)

{¶ 41} 15. The commission also had before it a report prepared by Michael Faust, Ph.D., clinical psychologist, at the request of the BWC.  Dr. Faust reviewed Ford's records and examined her on February 23, 2018.  Dr. Faust concluded as follows:  "Due to the [injured worker's] continued and significant symptoms of a Depressive Disorder NEC and Generalized Anxiety Disorder, I do not believe she could return to her prior position of employment at this time.  She is viewed as having attained MMI and therefore a period of TTD is not warranted."   (Stip. at 173.)   Dr. Faust distinguished between symptoms attributable to Ford's allowed conditions and those attributable to other underlying conditions, such as social anxiety and agoraphobia.  He stated "[h]er condition is more severe related to these additional conditions that are not a part of the claim, but her symptoms of the depressive disorder [generalized anxiety disorder] are sufficient to render her unable to work and I only addressed these in reviewing this question."  (Stip. at 173.) Dr. Faust additionally stated "Ms. Ford is exhibiting significant and severe depressive symptoms and anxiety at this time.  She is not viewed as an appropriate candidate for vocational rehabilitation due to the severity of her psychological symptoms."  (Stip. at 174.)

{¶ 42} 16.  Ford was examined for her physical conditions by Richard M. Kepple, M.D., who concluded as follows:  "In my opinion, Ms. Ford's physical limitations do not prevent her from performing sustained remunerative employment.  She has the ability to move about and change of position [sic] for her own comfort.  This conclusion is based on the above restrictions being strictly adhered to."  (Stip. at 110.)  Dr. Kepple concluded that Ford could work in a primarily sedentary position if she were allowed to sit, stand, and walk short distances and did not stoop, crouch, or climb steps, or lift more than ten pounds occasionally.

{¶ 43} 17.  An SHO heard Ford's PTD application on September 20, 2019.  The SHO concluded that the application for PTD should be granted as follows:

> The IC-2 Application for Compensation for Permanent Total Disability filed by the Injured Worker on 10/18/2018 is granted to the extent of this order.
>
> After full consideration of the issue, permanent total disability compensation is awarded from 04/19/2018, less any compensation previously paid from said date which is inconsistent with the receipt of permanent total disability compensation. This compensation is awarded pursuant to R.C. 4123.58(A) and is to continue without suspension unless

future facts or circumstances warrant the cessation of this award.

100% of this award is allocated to claim number 06-359046.

This decision is based on the 02/23/2018 report of Michael Faust, Ph.D., the 04/30/2018 report of James Lyall, Ph.D., the 06/14/2018 report of Kanubhai Patel, M.D., and the 06/10/2019 report of Douglas Pawlarczyk, Ph.D., wherein these mental health providers indicate the Injured Worker is incapable of sustained remunerative employment and is permanently and totally disabled solely as a result of the allowed psychological conditions in this claim. Pursuant to the holding in *State ex rel. Galion Mfg. Div., Dresser Industries v. Haygood,* 60 Ohio St.3d 38, 576 N.E.2d 60 (1991), it is not necessary to discuss or analyze the Injured Worker's non-medical disability factors when the medical evidence alone supports permanent total disability.

All evidence was reviewed and considered.

(Stip. at 10-11.)

{¶ 44} 18. The commission denied Altercare's further appeal by order dated November 1, 2019.

{¶ 45} 19. Altercare filed its complaint with this court for a writ of mandamus on March 18, 2020.

Discussion and Conclusions of Law:

{¶ 46} To be entitled to relief in mandamus, relator must establish that it has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, relator must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987); *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Credibility and the weight to be given evidence are clearly within the discretion of the commission as the factfinder. *State ex rel. Teece v. Indus. Comm.*, 68

Ohio St.2d 165 (1981); *State ex rel. Pacheco v. Indus. Comm.*, 10th Dist. No. 15AP-1033, 2017-Ohio-8971, ¶ 18.

{¶ 47} The inquiry when addressing a PTD determination from the commission under R.C. 4123.58(C)(2) is whether the claimant is capable of performing "sustained remunerative employment." *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). To ascertain whether the claimant is disabled, the commission will first consider medical evidence evaluating the claimant's physical or mental limitations resulting from allowed conditions in the claim. Ohio Adm.Code 4121-3-34(C)(1). The commission will then determine whether the allowed medical conditions alone, or in conjunction with non-medical factors such as vocational circumstances, will prevent a claimant from engaging in sustained remunerative employment. *State ex rel. Waddle v. Indus. Comm.*, 67 Ohio St.3d 452 (1993).

{¶ 48} Altercare argues that the commission's order is not supported by some evidence or, in the alternative, provides insufficient detail to ascertain the evidence relied upon and rationale underlying the decision.

{¶ 49} The magistrate first notes that, because the commission's order is based solely upon medical factors related to the allowed conditions, there is no need to assess non-medical factors such as Ford's age, education, and job history pursuant to *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987). *See generally State ex rel. Galion Mfg. Div. Dresser Industries, Inc. v. Haygood*, 60 Ohio St.3d 38 (1991).

{¶ 50} The commission's order is supported by the reports of Drs. Faust, Lyall, Patel, and Pawlarczyk, who all concluded that Ford was permanently and totally disabled. The commission, as trier of fact, could accept or reject the conclusions in these reports, and Altercare has not identified any mistake of law or fact that precludes consideration of these evidentiary items. The reports, by their own terms, limit consideration of Ford's ability to work solely to the allowed conditions, even where the reports acknowledge other factors affecting Ford's health. Dr. Faust acknowledged that Ford's pre-existing conditions contributed to her symptoms, but expressly limited his conclusions to the allowed conditions of depressive disorder NEC and generalized anxiety disorder. Dr. Pawlarczyk summarized his findings by assessing Ford's "residual mental and behavioral capacity resulting from the impairments associated with the allowed conditions." (Stip. at 88.) Dr. Lyall concluded that Ford was "unable to engage in regular remunerative employment and

as a result is permanently and totally disabled due *exclusively* to the allowed psychological conditions to the whole body."  (Emphasis added.)  (Stip. at 135-36.)

{¶ 51} The mere presence of non-allowed conditions will not automatically defeat a PTD application based on allowed conditions.  *Waddle* at 455.  While Altercare asks the court to conduct a de novo review of the medical evidence and consider the conflicting opinions of Drs. Tosi and Reynolds, the mere presence of conflicting evidence will not support a finding that the commission abused its discretion.  *State ex rel. Jeep Corp. v. Indus. Comm.*, 42 Ohio St.3d 83 (1989); *State ex rel. Stinespring-Welch v. Miller*, 10th Dist. No. 16AP-878, 2018-Ohio-1366.  Altercare points to the conflicting vocational report of Dr. Darling, the commission's prior denial of a request for treatment, and the results of Altercare's surveillance contractor.  The BWC's rejection of a prior request for treatment is not controlling in the commission's ultimate decision to grant PTD.  Moreover, the results of the surveillance operation were hardly supportive of the desired conclusion, given the limited range of activities observed therein.

{¶ 52} In summary, it is the magistrate's decision and recommendation that the commission did not abuse its discretion in relying upon the evidence cited in the SHO's report and issuing an order granting PTD, and the requested writ of mandamus should be denied.


/S/ MAGISTRATE
MARTIN L. DAVIS


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).